UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

DAVID M GREEN,                          §
                                        §
      Plaintiff,                  §
                                        §
VS.                                     §    CIVIL ACTION NO. 7:18-CV-00049
                                        §
CITY OF MISSION, *et al*,               §
                                        §
      Defendants.                 §

## OPINION

The Court now considers the motion to dismiss[1] brought by the City of Mission ("City"),

Jorge Cabrera ("Cabrera"), Javier Lara ("Lara"), and Sean De La Rosa ("De La Rosa")

(collectively "Defendants") as well as David M. Green's ("Plaintiff") response.[2] After duly

considering the record and relevant authorities, the Court **GRANTS IN PART AND DENIES**

**IN PART** Defendants' dismissal motion as follows.

### I.  BACKGROUND

The Court finds it helpful to quote directly from the "Facts" section in Plaintiff's first

amended complaint because they paint a clear picture of what happened, and are uniquely

appropriate to reference in this opinion given the fact that the Court is effectively tasked with

determining the legal sufficiency of these allegations:

> In the early afternoon of Monday, February 22, 2016, Mr. Green was at his home
> in Wagon City South, a small mobile home community in Mission, Texas. His
> son, David [hereinafter referred to as "David" or "Decedent"], lived with him at
> the time. David had a long history of mental illness, suffering from schizophrenia
> and bipolar disorder for most of his adolescent and adult life. David's mental
> illness had in the past been treated with prescription medication. But on this day,
> and for some period of time before, David had not taken his meds. Mr. Green

---

[1] Dkt. No. 8.
[2] Dkt. No. 9.

noticed David's behavior become increasingly unstable, culminating in David's wielding an ax and acting out aggressively.

At approximately 1:40 p.m., Mr. Green called 911, seeking help for his mentally ill son. A MPD dispatcher received the call. Mr. Green calmly explained to the dispatcher that his son had a mental disability because he was mentally ill and diagnosed with schizophrenia, but was off his medication and making physical threats. Mr. Green also told the dispatcher that David was a mental health patient who had spent significant time in a hospital and was at that point in the midst of a mental health crisis.

While Mr. Green remained on the phone, the dispatcher relayed the call to police officers in the area. The dispatcher did not, however, report David's mental illness or past treatment nor call for any medical personnel or mental health crisis specialists to report to Wagon City South. Mr. Green advised the dispatcher that David was outside the home, had put down the ax, and had picked up a machete. Officer Cabrera, a traffic investigator, was the first to arrive on the scene.

Upon arrival at Mr. Green's residence, Officer Cabrera immediately encountered David outside of Mr. Green's home. David was still holding a machete and obviously suffering a mental health crisis. Rather than try to deescalate the crisis, Officer Cabrera immediately drew his weapon without provocation and yelled commands while pointing his handgun at David. Officer Cabrera ordered David to drop the machete. David did so within seconds.

In apparent desperation and fear, David retreated to the safety of Mr. Green's nearby pick-up truck. Again failing to use de-escalation tactics, Officer Cabrera continued his aggressive attempt to apprehend David even though Officer Cabrera had not seen David commit any crime, and even though David had dropped the machete and had no weapon. Officer Cabrera continued to point his handgun at David and aggressively yell commands.

In a panic, David started the pick-up truck and began driving forward. In response, Officer Cabrera positioned himself in front of the vehicle. David exited the driveway and tried to avoid hitting Officer Cabrera by driving around him on his right side. Officer Cabrera stepped back as the vehicle passed by and fell sideways as David turned left around him. Officer Cabrera returned to his feet and, under no threat of harm to himself or anyone else, fired three shots at David as he drove away.

Mr. Green witnessed these events, all while on the phone with the MPD dispatcher. As David started the vehicle, Mr. Green pleaded with Officer Cabrera to shoot the tires and not David. After Officer Cabrera fell and after he fired shots at David, Mr. Green hung up the phone and went outside.

Officer Cabrera returned to his patrol vehicle and went on a high-speed search for David within the small mobile home community. Additional police vehicles arrived at Wagon City South while Officer Cabrera's search continued. Officer Lara was one of the responding officers. Officer De La Rosa was another.

David continued to drive the pick-up truck around the mobile home park with no apparent intent to do anything other than avoid police officers trying to shoot him. While in his patrol vehicle, Officer Lara spotted the pick-up truck driving towards him. Officer Lara positioned his patrol vehicle in front of the truck to stop it. But David swerved left to avoid Officer Lara's patrol vehicle, further demonstrating that he was not trying to injure anyone but simply get away from Officers that appeared to him to threaten his life.

Officer Lara exited his vehicle and continued his pursuit on foot carrying his assault rifle and handgun. David continued his frantic and fearful attempt to avoid being shot by police, driving in circles around the mobile home park. The police set up a blockade of patrol vehicles at one of the intersections inside the park. It was at this blockade that Officer Lara positioned himself and readied his assault rifle. David turned a corner and approached the blockade.

Upon seeing the blockade and Officer Lara ahead of him, David again attempted to avoid contact with the police by veering left onto the yard of an adjacent property. As David veered left, Officer Lara fired his assault rifle at David while under no threat of harm. David avoided contact with other vehicles or homes, but ultimately struck a large tree as he attempted to drive around the blockade and Officer Lara. An elderly woman standing outside of her home and near the tree that David struck showed no signs of fear or distress.

The impact with the tree caused major damage to the pick-up truck and left it inoperable. Both the driver-side and passenger-side airbags deployed from the collision, and there was no visibility through the windshield because it was covered by the bent, crushed hood of the vehicle and tree branches. The front of the vehicle had caved in. The grill was smashed and the front bumper had pierced the engine compartment. The horn of the pick-up truck blared loudly and would not shut off, as if it was stuck in the on position.

The pick-up truck could not move forward and presented no threat to any officer or other person. Immediately after David struck the tree, Officer Lara approached the passenger side of the pick-up truck with his assault rifle pointed at David. Within seconds, without any provocation and without any threat of imminent harm, Officer Lara squeezed the trigger of his assault rifle, intending to kill David. The rifle failed to fire. The horn continued to blare as the truck remained disabled and in no position to threaten harm to any person. The elderly woman stood nearby and watched in astonishment as Officer Lara, undeterred by a jammed assault rifle (and any celestial message that could be interpreted from it), pulled out his handgun and fired four rounds into the pick-up truck. The final

round struck David in the neck, causing him to seize up as he bled profusely, surrounded by officers with weapons drawn.

As David sat dying in the vehicle, and no doubt in a state of shock and confusion, the pick-up truck slowly rolled backwards until it ran into a mobile home. Inexplicably, Officer Lara and Officer De La Rosa approached the vehicle firing their own additional rounds at David, hitting him in the arm and chest.

When it was clear that David was dead, the Officers dragged David's lifeless body from the red pick-up truck and laid him on the grass face down. The Officers eventually covered David's body with a yellow tarp.[3]

Plaintiff filed his original complaint against Defendants in February 2018,[4] and thereafter filed an amended complaint as a matter of course.[5] The amended complaint alleges Fourth, Eighth, and Fourteenth Amendment claims of excessive force, cruel and unusual punishment, due process, and equal protection against Cabrera, Lara, and De La Rosa in their individual capacities.[6] Moreover, Plaintiff alleges that the City is liable via 42 U.S.C. §1983 for these same constitutional violations which are alleged to have arisen because the City had policies that encouraged excessive force and because it failed to properly train and supervise its employees.[7]

Furthermore, Plaintiff alleges that the City violated Title II of the Americans with Disabilities Act ("ADA") as well as § 504 of the Rehabilitation Act ("RA").[8] Plaintiff alleges negligence against the City based upon Cabrera, Lara, and De La Rosa's actions, and that the City's sovereign immunity has been waived by the Texas Tort Claims Act ("TTCA").[9] Lastly, Plaintiff alleges that he "suffered extreme emotional distress" because he "heard at least nine

---

[3] Dkt. No. 7 pp. 3–7, ¶¶ 10–24.
[4] Dkt. No. 1.
[5] Dkt. No. 7. Federal Rule of Civil Procedure 15(a)(1)(A) provides for amendment as a matter of course when the amended pleading is filed within twenty-one days after service of the original pleading upon the defendant. Here, the summons for all Defendants were not issued until February 23, 2018, and thus they could not have been served any earlier than this date. Plaintiff's first amended complaint was filed exactly twenty-one days later—March 16, 2018, and is thus valid as a matter of course.
[6] *Id*. pp. 7–8.
[7] *Id*. pp. 8–12.
[8] *Id*. p. 18, ¶ 57.
[9] *Id*. p. 21, ¶ 66.

gunshots and knew instantly that the Officers had killed his son," and that this was the result of the Officers' and ultimately the City's negligence.[10] Thus, it appears that Plaintiff is alleging a bystander theory of negligent infliction of emotional distress. Plaintiff's substantive claims are accompanied by coordinate requests for declaratory and injunctive relief.[11]

Defendants filed the instant motion to dismiss,[12] and Plaintiff timely responded,[13] rendering the motion ripe for review. The Court now turns to its analysis.

## II. LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[14] This does not require detailed factual allegations, but it does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[15] Courts first disregard from their analysis any conclusory allegations as not entitled to the assumption of truth,[16] but regard well-pled facts as true, viewing them in the light most favorable to the plaintiff.[17] Courts then undertake the "context-specific" task of determining whether the remaining well-pled allegations give rise to an entitlement to relief that is plausible, rather than merely possible or conceivable.[18]

## III. ANALYSIS

### A. *Section 1983 Claims*
#### ***i. Eighth Amendment***
Defendants argue that Plaintiff's Eighth Amendment claim is improperly pled because the prohibition on cruel and unusual punishment only applies to convicted prisoners, not other

---

[10] *Id.* ¶¶ 68–71.
[11] *Id.* pp. 22–23, ¶¶ 76–77.
[12] Dkt. No. 8.
[13] Dkt. No. 9.
[14] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007), *cert. denied*, 552 U.S. 1182 (2008) (internal quotations omitted).
[15] *Twombly*, 550 U.S. at 555.
[16] *See id.* at 678–79.
[17] *Id.*
[18] *See id.* at 679–80.

persons such as arrestees or pretrial detainees.[19] The Fifth Circuit has held that the Eighth Amendment prohibition on cruel and unusual punishment only protects convicted prisoners.[20] Here, Plaintiff has not pled that Decedent was a convicted prisoner. Thus, Plaintiff's Eighth Amendment claim is **DISMISSED WITH PREJUDICE**.

### ii. Fourteenth Amendment—Equal Protection

Defendants also contend that Plaintiff's Equal Protection claim is improperly pled in light of the nature of Equal Protection claims.[21] Defendants cite Fifth Circuit precedent for the proposition that the Equal Protection Clause's "protection reaches only dissimilar treatment among similar people . . . ."[22] Indeed, in the context of § 1983 claims against law enforcement officers, the heart of an Equal Protection claim is *discriminatory* intent and treatment.[23] Here, Plaintiff does not allege any actions towards Decedent that constituted "dissimilar treatment among similar people." Notably, it is not clear from Plaintiff's complaint whether any of the individual defendants were aware Decedent had been diagnosed with any psychological disorders when the events giving rise to this case took place. Thus, the Court cannot reasonably infer that discriminatory intent motivated the individual defendants' actions. Plaintiff does not address dismissal of his Equal Protection claim in his response. Moreover, as will be discussed below, generally, excessive force claims in the detention context cannot properly be brought under any Constitutional provision except the Fourth Amendment. Therefore, the Court finds that Plaintiff's Equal Protection claim is improperly pled and is **DISMISSED WITH PREJUDICE.**

---

[19] Dkt. No. 8 pp. 6–7, ¶¶ 15–16.
[20] *Carlton v. Fearneyhough*, 2008 WL 686595, at *2 (5th Cir. Mar. 12, 2008).
[21] Dkt. No. 8 p. 6, ¶¶ 13–14.
[22] *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 932 (5th Cir. 1988).
[23] *See Stout v. Vincent*, 2018 WL 816644, at *3 (5th Cir. Feb. 9, 2018).

### iii. Fourteenth Amendment—Due Process

Defendants cite Supreme Court precedent for the proposition that excessive-force claims, by their very nature, must be brought under the Fourth Amendment, and cannot be brought in the form of a Fourteenth Amendment Due Process claim.[24] Indeed, the Supreme Court in *Graham* confirms this proposition.[25] The *Graham* Court held that excessive force claims in the context "of an arrest or investigatory stop" cannot be brought under the Fourteenth Amendment Due Process Clause, and must instead be brought under the Fourth Amendment, which provides an "explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct . . . ."[26]

The *Graham* Court specifically grounded its ruling in *Garner*, in which officers used deadly force. Although the plaintiff in *Garner* brought an excessive force claim under both the Fourth and Fourteenth Amendments,[27] the Court refused to analyze it under the Fourteenth Amendment. Thus, the *Graham* Court made "explicit what was implicit in *Garner's* analysis," holding that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."[28] In his response, Plaintiff does not contest dismissal of his Fourteenth Amendment Due Process claim against the individual defendants. For all these reasons, Plaintiff's Fourteenth Amendment Due Process claim—grounded in allegations of excessive force—is not legally viable, and must be **DISMISSED WITH PREJUDICE**.

---

[24] Dkt. No. 8 p. 5, ¶ 12.
[25] *Graham v. Connor*, 490 U.S. 386, 393–94 (U.S. 1989).
[26] *Id*. at 394–95.
[27] *See Tennessee v. Garner*, 471 U.S. 1, 6 (1985).
[28] *Graham*, 490 U.S. at 395.

### iv. Fourth Amendment excessive force

Defendants argue that Plaintiff's Fourth Amendment excessive force claim fails because Plaintiff does not "allege any facts that would support an excessive force cause of action . . . ."[29] Defendants further contend that even if Plaintiff had properly alleged sufficient facts to support an excessive force claim, the individual defendants in this case are entitled to qualified immunity because "Plaintiff has not alleged facts sufficient to demonstrate that no reasonable officer in the same situation and set of circumstances . . . could have believed their actions were proper."[30] Plaintiff directly addresses these arguments at length in his response.[31]

Because Defendants challenge Plaintiff's Fourth Amendment excessive force claim both on the merits and on the basis of qualified immunity, the Court proceeds in that order. First, the Court will evaluate whether Fourth Amendment excessive force claims have been sufficiently pled on the merits with regard to each individual defendant. The Court then turns to qualified immunity with regard to those excessive force claims that pass muster on the pleadings.

*Excessive Force*

A Fourth Amendment excessive force claim has the following elements: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable."[32] The second and third elements are extremely fact-specific inquiries. Whether the use of particular force was reasonable or excessive depends upon the totality of the circumstances, including: the severity of the crime, amount of force used

---

[29] Dkt. No. 8 p. 9, ¶ 21.
[30] *Id*.
[31] Dkt. No. 9 pp. 13–15.
[32] *Mathews v. Davidson*, 674 Fed. App'x. 394, 395 (5th Cir. 2017), as revised (Jan. 9, 2017) (quoting *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008)).

contrasted with the amount of force needed, whether the suspect posed a safety risk to police or the public, and whether the suspect was actively resisting arrest or evading arrest by flight.[33]

The Court begins with Plaintiff's excessive force claim against Officer Cabrera. Plaintiff has failed to allege a cognizable claim against Cabrera. Plaintiff's pleadings do not indicate that Cabrera fired any shots that injured Decedent or otherwise participated in any force that caused Decedent's injuries. Under § 1983 each government official is "only liable for his or her own misconduct."[34] It is unclear from the complaint if Cabrera was even at the immediate location when Decedent was injured. Thus, Plaintiff fails to allege facts sufficient to find Cabrera personally participated in the events that caused Decedent's injuries. Accordingly, Plaintiff's excessive force claim against Cabrera is **DISMISSED WITH PREJUDICE**.

The Court now considers Plaintiff's excessive force claim against Lara and De La Rosa. Plaintiff alleges that Lara fired into Decedent's truck four times with his handgun after the truck had struck a tree thus immobilizing Decedent.[35] The fourth bullet struck Decedent in the neck, causing him to seize and bleed profusely.[36] Decedent was not armed.[37] Lara and De La Rosa fired additional rounds at Decedent, "hitting him in the arm and chest."[38]

Given the facts alleged, Plaintiff has pled a valid excessive force claim against Lara and De La Rosa under the Fourth Amendment. Indeed, Defendants do not contend otherwise in their briefing. Decedent suffered an injury because Lara shot him in the neck. Decedent also suffered an injury because Lara and De La Rosa subsequently shot Decedent again in the arm and chest, although it is not clear exactly who shot Decedent in the arm and who shot Decedent in the chest.

---

[33] *Bone v. Dunnaway*, 657 Fed. App'x. 258, 262 (5th Cir. 2016).
[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (U.S. 2009)
[35] Dkt. No. 7 p.6, ¶ 21.
[36] *Id*. ¶ 22.
[37] *Id*. p. 4, ¶ 14.
[38] *Id*. p. 6, ¶ 23.

Given all the surrounding circumstances, the facts alleged are sufficient to support a claim that this force was excessive to the need. Similarly, the facts sufficiently allege that the use of such force was objectively unreasonable, given the surrounding circumstances. Moreover, Lara and De La Rosa were clearly acting under color of state law as police officers, and thus may be liable for Constitutional violations under 42 U.S.C. § 1983.[39] Consequently, the essential elements of a Fourth Amendment excessive force claim have been pled.

Since Plaintiff has sufficiently pled the elements of an excessive force claim against Lara and De La Rosa, the Court now turns to whether these officers are entitled to qualified immunity, thus escaping liability. As an initial matter, the plaintiff bears the burden to establish qualified immunity after it has been raised in a defendant's dismissal motion, even when that defendant has not answered yet and thus has not solidified qualified immunity as one of his affirmative defenses.[40] To meet this burden, the plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[41] Here, the Court has already determined that Plaintiff's allegations are sufficient to find that Lara and De La Rosa violated the Fourth Amendment, so the only remaining question is the second prong of the analysis: whether the alleged violations of Decedent's rights were clearly established at the time they occurred.[42]

A right is clearly established if a reasonable official would understand that what he is doing violates that right.[43] An official's actions are held to be reasonable unless "all reasonable

---

[39] 42 U.S.C.A. § 1983. "Every person who, *under color of* any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." (emphasis added).

[40] *Ristow v. Hansen*, 2018 WL 671150, at *3 n.12 (5th Cir. Feb. 1, 2018).

[41] *Id.*

[42] *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004).

[43] *Anderson v. Creighton*, 483 U.S. 635, 640 (U.S. 1987).

officials" in the same circumstances would have known that the conduct violated the plaintiff's asserted rights.[44] The focus of the analysis is on whether an official had "fair notice" that the conduct was unreasonable and is judged against "the backdrop of the law at the time of the conduct."[45] To find that an official had fair notice "there must be a controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[46] However, "this does not mean that 'a case directly on point' is required."[47] Rather, "existing precedent must have placed the statutory or constitutional question 'beyond debate.'"[48]

In this case, Plaintiff has met his burden. Plaintiff correctly points out that it was clearly established at the time of the incident that "deadly force violates the Fourth Amendment unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others,"[49] and this threat of physical harm must be "immediate."[50] While a review of Fifth Circuit cases does not provide any case that is directly on point, a review of similar cases provide insight into whether there was a "robust consensus" that the conduct in question was objectively unreasonable.

The Fifth Circuit found that an officer that shot an unarmed, mentally-ill man who was acting erratically had fair notice that such behavior was objectively unreasonable.[51] In *Mason v. Lafayette City-Parish Consolidated Government* the Fifth Circuit declined to provide qualified

---

[44] *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001).

[45] *Brosseau v. Haugen*, 543 U.S. 194, 198 (U.S. 2004).

[46] *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (internal quotation marks and citation omitted).

[47] *Id.* at 372 (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (U.S. 2011)).

[48] *Id.*

[49] *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001) (quotations omitted).

[50] *Garner*, 471 U.S. at 11.

[51] *Hobart v. Estrada,* 582 Fed. Appx. 348, 355 (5th Cir. 2014) (denying qualified immunity to officer who shot unarmed, mentally ill nineteen-year-old who was advancing on officer, flailing his arms, and had hit the officer); *see also Khansari v. City of Houston,* 14 F. Supp. 3d 842, 859 (5th Cir. 2014) (finding that officers who tasered an unarmed teen suffering from severe anxiety were not entitled to qualified immunity).

immunity to a police officer who fired two additional shots at a suspect after the suspect was already prone from prior gun shots.[52] Additionally, Fifth Circuit case law "makes certain that once an arrestee stops resisting, the degree of force an officer can employ is reduced."[53]

Plaintiff alleges that when Lara fired the first round of shots, Decedent was unarmed and was no longer trying to escape as he was stunned and his truck had been immobilized from an accident.[54] When Lara and De La Rosa fired the next round of shots Decedent was seizing from a gunshot wound to the neck.[55] These allegations are sufficient to find that any reasonable officer in similar circumstances would have believed that Decedent was no longer resisting and did not pose a threat of serious physical harm and thus that applying deadly force in such circumstances would be objectively unreasonable. Accordingly, Lara and De La Rosa's alleged conduct violated a clearly established right and they are not entitled to qualified immunity.

Plaintiff has sufficiently pled the necessary elements of excessive force and met his burden to demonstrate that the officers are not entitled to qualified immunity. Defendants' motion is **DENIED** as it relates to the excessive force claims against Lara and De La Rosa.

*Excessive Force – Bystander Liability*

The Court now turns to the Plaintiff's Fourth Amendment claim against Cabrera and De La Rosa for failing to take reasonable steps to stop Lara from engaging in excessive force. Plaintiff argues that Defendants did not explicitly move to dismiss this particular legal theory regarding excessive force.[56] However, Defendants moved to dismiss Plaintiff's excessive force

---

[52] 806 F.3d 268, 277 (5th Cir. 2015) (finding that an officer who fired two additional shots after suspect was already prone and immobile from previous shots was not entitled to qualified immunity).
[53] *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016); *see e.g., Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012) (per curiam) (officer "should have known that he could not continue to shock [the suspect] with the taser after he was no longer resisting arrest").
[54] Dkt. No. 7 p. 6, ¶ 22.
[55] *Id.*
[56] Dkt. No. 9 p. 15.

claims against all three officers, which included this alternative theory of liability.[57] Accordingly, the Court will consider whether Plaintiff's claim against Cabrera and De La Rosa for failing to intervene to prevent excessive force is sufficiently pled.

The Fifth Circuit has articulated an independent basis for excessive force—"bystander liability."[58] Under this theory, excessive force liability may lie for any officer who "is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force."[59] The underlying rationale "is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer."[60] Such liability lies against an officer when he: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."[61] Bystander liability requires that the officer in question be at the scene of the Constitutional violation when it occurred.[62] Moreover, it is important whether the officer "acquiesced" in the constitutional violation.[63]

Here Plaintiff has not sufficiently pled a cognizable claim of bystander liability for excessive force. Plaintiff alleges that Lara approached the truck and "[w]ithin seconds" fired his assault rifle, which jammed, and that "undeterred by a jammed assault rifle . . . pulled out his handgun and then fired four rounds into the pick-up truck."[64] Plaintiff provides no facts that would support finding that Cabrera and De La Rosa had a reasonable opportunity to intervene and stop this conduct, or that they acquiesced in Lara's actions. Plaintiff's assertions to the

---

[57] Dkt. No. 8 p. 9, ¶ 21.
[58] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).
[59] *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).
[60] *Estate of Sizer by & through Sizer v. Cameron*, 2017 WL 2418316, at *12 (W.D. Tex. June 1, 2017) (quoting *Whitley v. Hanna*, 726 F.3d 631, 647 (5th Cir. 2013)).
[61] *Id*.
[62] *Id*.
[63] *Id*. at 647.
[64] Dkt. No. 7 p. 6, ¶ 22.

contrary are purely conclusory.[65] Indeed, it is unclear from Plaintiff's complaint whether Defendant Cabrera was even at the location during the shooting. Accordingly, Plaintiff has failed to allege a cognizable claim of excessive force based on bystander liability against Cabrera and De La Rosa, and these claims are **DISMISSED WITH PREJUDICE**.

### v. Claims against the City of Mission

Cities may not be sued under § 1983 for an injury inflicted solely by its employees or agents, however, cities may be liable if their policies or customs *caused* the underlying constitutional violation.[66] Defendants argue that Plaintiff fails to sufficiently allege a custom, policy or practice of the City that contributed to the underlying constitutional violation as required under § 1983.[67] Defendants also argue that Plaintiff did not sufficiently identify a policymaker that was aware of a specific policy regarding training and supervision that would result in a constitutional violation.[68]

Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation.[69] In order to allege a claim under § 1983 against a municipality a plaintiff must identify: (1) a policymaker who can be charged with actual or constructive knowledge of, (2) an official policy (or custom), and (3) a constitutional violation whose 'moving force' is that policy or custom.[70]

As noted above, Plaintiff has sufficiently alleged a constitutional violation for excessive force against Lara and De La Rosa. However, the City of Mission may only be liable for this violation if their official policies or customs were the "moving force" that caused this underlying

---

[65] *See id.* p. 8, ¶ 27.
[66] *Monell v. Dep't of Social Services,* 436 U.S. 658, 690-91, 694 (U.S. 1978)).
[67] Dkt. No. 8 pp. 3–5, ¶¶ 7–10.
[68] *Id.* p. 3, ¶ 7.
[69] *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 391-92 (U.S. 1989).
[70] *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

constitutional violation *and* that policy makers had actual or constructive knowledge of this policy. The Court will now consider whether Plaintiff has sufficiently alleged a claim against the City.

An official policy may be shown either with (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by someone with policymaking authority, or (2) "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[71]

Here, Plaintiff points to no written or officially adopted policy as the moving force behind the violations, but argues a customs and practices theory of municipal liability. In this regard Plaintiff proceeds on two legal theories: (1) that the City's widespread and persistent policies, customs, and practices regarding responses to emergency calls relating to mentally-ill citizens encouraged the use of excessive force;[72] and (2) that the City's failure to adequately supervise and train its officers amounted to deliberate indifference and thus the City is liable for the excessive force that stemmed from that training.[73] The Court will consider each argument in turn.

*Custom or Policy Encouraging Excessive Force*

"A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct."[74] To properly state a claim "[t]he description of a policy or

---

[71] *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)).
[72] Dkt. No. 7 pp. 13–17, ¶¶ 40–52.
[73] *Id.* pp. 8–13 ¶¶, 28–39.
[74] *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).

custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."[75]

Persistent practices that would constitute an official policy are not indicated by "isolated violations" but rather through "persistent, often repeated, constant violations."[76] In other words, a plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case."[77] "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'"[78] In addition to similarity and specificity, a pattern must be comprised of "sufficiently numerous prior incidents" rather than merely "isolated instances."[79]

Plaintiff fails to allege sufficient facts to find a "persistent pattern and practice" that would indicate a custom of encouraging excessive force. Plaintiff identifies no additional incidences by which a pattern of violations could be identified. Indeed, Plaintiff concedes as much.[80] Instead, Plaintiff relies on *Hobart v. City of Stafford*, a district court case regarding a mentally-ill young man who was shot in his home after police were called. [81] Plaintiff contends that allegations similar to those in Plaintiff's complaint were deemed sufficiently specific to state a claim for relief.[82] Based on this, Plaintiff contends that he must merely plead "specific ways in which the alleged customs instructed officers to act" unconstitutionally.[83] However, Plaintiff is mistaken.

---

[75] *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).
[76] *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir 2001).
[77] *Id.* at 582.
[78] *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).
[79] *McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989).
[80] Dkt. No. 9 p. 9.
[81] *Hobart v. City of Stafford*, No. 4:09-cv-3332, 2012 U.S. Dist. LEXIS 53761 (S.D. Tex. Apr. 17, 2012).
[82] Dkt. No. 9 p. 7.
[83] *Id.* (citing *Hobart v. City of Stafford*, No. 4:09-cv-3332, 2012 U.S. Dist. LEXIS 53761).

Fifth Circuit case law is clear that the policy or custom must be adequately described and factually supported.[84] Sweeping statements that constitutional deprivations "were effected pursuant to [municipal] policy, practice and/or custom" will not suffice.[85] The Court notes that much of the language from Plaintiff's complaint appears to be copied directly from the complaint used in the *Hobart* case, which regarded the policies and practices of the City of Stafford and not the City of Mission, the defendant here.[86] Rather than supporting the sufficiency of Plaintiff's allegations, this indicates that Plaintiff's complaint lacks the specificity that is required under the law. Plaintiff's allegations do not specifically indicate any pattern of policies or customs that contribute to violations and thus amount to sweeping and conclusory statements.

Plaintiff also argues that, in the alternative, he may allege an official policy or custom by indicating that a final policymaker took a single unconstitutional action.[87] But those circumstances are "extremely narrow and give[] rise to municipal liability only if the municipal actor is a final policymaker."[88] Plaintiff's allegations do not meet this standard either. Plaintiff does not indicate any policy maker by name, and makes no allegation that a final policy maker took any action regarding this incident. Indeed, Plaintiff argues that the facts alleged are indicative of daily procedural decisions, and thus, required no action on the part of any policy maker.[89] This does not give rise to liability under the single-incident exception.

---

[84] *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).
[85] *See McClure v. Biesenbach,* 355 Fed. Appx. 800, 2009 WL 4666485 *3 (5th Cir. Dec. 9, 2009).
[86] *See Hobart*, No. 4:09-cv-3332, 2012 U.S. Dist. LEXIS 53761 Dkt. Nos. 1, 54. The Court additionally notes that the district judge in that case found that the plaintiffs' initial complaint insufficiently alleged a claim against a municipality because it failed to allege a pattern of constitutional behavior, but gave plaintiffs leave to amend. *Id.* Dkt. No. 45 p. 17. The amended complaint there contained notable differences to the facts alleged here. In particular it specifically named the police chief and the source of his legal authority and stated that the police chief and the city knew that the officer involved in the complaint had a known history of dangerous behavior. *See id.* Dkt. No. 54, *see also* Dkt. No. 79 p. 26.
[87] *See Zarnow*. 614 F.3d at 169 (emphasis in original).
[88] *Valle*, 613 F.3d at 542.
[89] Dkt. No. 7 p.14, ¶ 43.

Accordingly, Plaintiff has failed to sufficiently state a claim for municipal liability based on an official policy that would encourage excessive force.

*Failure to Train*

In addition, Plaintiff separately argues that the City was deliberately indifferent in its training practices. A municipality's failure to train police officers can give rise to § 1983 liability.[90] To prevail on a "failure to train theory" a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question.[91] "In order for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective."[92] The Fifth Circuit has "rejected attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train."[93] Alternatively, a plaintiff may allege deliberate indifference based on a single incident, but that circumstance is rare and "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation."[94]

Plaintiff fails to allege a cognizable claim against the City for failure to train. Plaintiff has not adequately pled deliberate indifference, which ordinarily requires a pattern of similar conduct.[95] Plaintiff concedes that he makes no allegations regarding any patterns of similar conduct. Instead, Plaintiff argues that he should be able to proceed based upon only the single

---

[90] *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (citations omitted).
[91] *Id.*
[92] *Id.* (internal quotation marks omitted) (quoting *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005)).
[93] *Zarnow*, 614 F.3d at 170.
[94] *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).
[95] *See Connick v. Thompson*, 563 U.S. 51, 62 (U.S. 2011).

incident described herein. Plaintiff again relies on *Hobart*, and argues that "highlighting specific areas of inadequate training regarding mentally-ill people that made the injurious consequences of the failure to train obvious" in that case was sufficient to state a claim.[96]

The Court again notes that using the same language as that used in a complaint that applied to a different situation in a different city is not indicative of the specificity required under the law to allege a cognizable claim. In addition, Plaintiff is also mistaken as to the law. The district court's ruling in *Hobart* regarding the failure to train claim was appealed to the Fifth Circuit in *Hobart v. Estrada*.[97] The Fifth Circuit concluded that the district court's ruling was "far too expansive an application of what is supposed to be an extremely narrow rule."[98] The Fifth Circuit reversed stating that the plaintiff must show that the policy maker was "aware that a shooting such as this was a highly predictable result of the training being provided."[99]

Here, Plaintiff's allegations are not sufficiently specific to give rise to a plausible inference that any training, or lack thereof, provided to the Officers' could give rise to liability based on this single incident.[100] Plaintiff must show that the result of the failure to train was "highly" predictable and resulted in the specific injury complained of. Plaintiff makes no such showing.

Based on the foregoing, Plaintiff has failed to identify an official policy or custom of the City of Mission that was the 'moving force' behind a constitutional violation. Accordingly, Plaintiff's claims for liability against the City under § 1983 must be **DISMISSED WITH PREJUDICE.**

---

[96] Dkt. No. 9 p. 12–13.
[97] 582 F. Appx 348 (5th Cir. 2014).
[98] *Id.* at 358.
[99] *Id.* at 359.
[100] *See City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (U.S. 1989) (hypothesizing that a city giving officers firearms and requiring them to arrest fleeing subjects without training could create single incident liability).

B.       *Claims under the ADA/RA*

Defendants contend that Plaintiff's claims under the ADA fail as a matter of law because the ADA does not apply to law enforcement responding to calls on the street regardless of whether the subject was an individual with a mental disability.[101] The Fifth Circuit has held that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life."[102]

Here, Plaintiff's allegations indicate that the Officers were in the process of securing the area, during which time Decedent was shot. Plaintiff contends that Decedent was not a threat to human life; however, Decedent was involved in a high speed car chase and had previously been using an ax and a machete. Plaintiff makes no allegation that the scene was secure prior to the shooting. In these circumstances, the ADA does not apply.[103]

Plaintiff states that he also seeks relief under the ADA against the City for their failure to conduct a self-evaluation as required under the statute.[104] Plaintiff argues that Defendants did not move to dismiss this particular claim; however, Plaintiff's complaint did not indicate that this was a separate basis for relief. Additionally, Defendants motion moved to dismiss all Plaintiff's claims under the ADA and RA.[105]

Plaintiff has also failed to plead a claim against the City for their alleged failure to conduct a self-evaluation.[106] Since Plaintiff has failed to plead an ADA claim, as noted above,

---

[101] Dkt. No. 8 p. 11, ¶ 24.
[102] *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000).
[103] *See e.g., Munroe v. City of Austin,* No. 1:16-CV-1166-RP, 2018 U.S. Dist. LEXIS 39763, at *27 (W.D. Tex. Mar. 12, 2018) (stating for a claim where a mentally disabled man was tastered in a police encounter that, "The ADA claim is directly controlled by *Hainze v. Richards* and therefore must be dismissed.").
[104] Dkt. No. 7 p. 19, ¶ 61(d).
[105] Dkt. No. 8 p. 11, ¶ 24.
[106] The ADA requires that a public entity "evaluate its current services, policies, and practices, and the effects thereof … [and] proceed to make the necessary modifications." 28 C.F.R. § 35.105(a).

Plaintiff has no standing to plead a claim regarding self-evaluation.[107] Plaintiff has no independent private cause of action under this section of the statute.[108] Therefore, Plaintiff has not sufficiently pled a claim for relief regarding the self-evaluation requirement.

Plaintiff's allegations indicate that the Officers were securing the area when the injury occurred and therefore Plaintiff has failed to state a claim under the ADA. Accordingly, all Plaintiff's claims for relief under the ADA and RA are **DISMISSED WITH PREJUDICE.**

C.     *State law claims under the Texas Tort Claims Act ("TTCA")*

### i.  *Claims Against Individual Defendants*

Defendants argue that Plaintiff's claims against Lara, Cabrera, and De La Rosa must be dismissed pursuant to the TTCA.[109] However, Plaintiff's complaint did not bring any state law tort claims against the individual defendants and thus Defendants' motion is moot in this regard and is **DENIED**.

### ii.  *Claims against the City*

Plaintiff brings three tort claims: (1) negligent use of weapons; (2) negligence due to defective equipment; and (3) bystander emotional distress.[110] Defendants argue that Plaintiff's tort claims against the City should also be dismissed because the City is entitled to governmental

---

[107] *Hainze*, 207 F.3d at 802; *see also Windham v. Harris Cty. Tex.*, No. 4:13-CV-1576, 2016 U.S. Dist. LEXIS 124435, at *22 (S.D. Tex. Sep. 13, 2016).

[108] The Fifth Circuit has not specifically ruled on whether there is a private cause of action under 28 C.F.R. § 35.105(a). However, no Fifth Circuit district court has found a private cause of action and at least one has ruled that no such cause of action exists. *See DeLeon v. City of Alvin Police Dep't*, No. H-09-1022, 2011 U.S. Dist. LEXIS 1354, at *17 (S.D. Tex. Jan. 6, 2011). The Court notes that the First, Sixth and Ninth Circuits have ruled against finding a private cause of action under this section of the statute. *See Iverson v. City of Bos.*, 452 F.3d 94, 101 (1st Cir. 2006); *Plans Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 914 (6th Cir. 2004); *Californians for Disability Rights, Inc. v. Cal. DOT*, 249 F.R.D. 334, 342 (N.D. Cal. 2008). However the Tenth Circuit, viewing the requirements of the statute as a whole, did find a private cause of action. *See Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850 (10th Cir. 2003).

[109] *See* Tex. Civ. Prac. & Rem. Code §§ 101.106 (e) ("If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.").

[110] *Id.* pp. 22-25.

immunity.[111] Plaintiff argues that his claims fall into exceptions identified under TTCA.[112] The Court will lay out the standards for governmental immunity and liability under the TTCA and then consider each of Plaintiff's claims.

In Texas, under the doctrine of sovereign immunity, a governmental entity cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity.[113] Sovereign immunity can be waived only through the use of clear and unambiguous language.[114] In the absence of a waiver, the City is entitled to sovereign immunity.[115]

The Texas Legislature enacted the TTCA to waive sovereign immunity in certain limited circumstances.[116] City governments fall under the TTCA.[117] For a city to be held liable for the acts of its employee under the TTCA: (1) the claim must arise under one of the specific areas of liability; and (2) the claim must not fall within an exception to the waiver of sovereign immunity.[118]

The TTCA outlines the areas of specific liability noting that a governmental unit in Texas is liable for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
> > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> > (B) the employee would be personally liable to the claimant according to Texas law; and

---

[111] Dkt. No. 8 pp. 12-13, ¶ 27.

[112] Dkt. No. 9 p. 21.

[113] *See City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex. 1998); *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex.), cert. denied, 142 L. Ed. 2d 450, 119 S. Ct. 541 (1998); *Harris County v. Dillard*, 883 S.W.2d 166, 168 (Tex. 1994).

[114] *See Duhart v. State*, 610 S.W.2d 740, 742 (Tex. 1980).

[115] *See City of El Paso v. W.E.B. Investments*, 950 S.W.2d 166, 169 (Tex. App.--El Paso 1997, writ denied); *Allen v. City of Midlothian*, 927 S.W.2d 316, 322 (Tex. App.--Waco 1996, no writ).

[116] *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 586 (Tex. 1996).

[117] *Holland v. City of Hous.*, 41 F. Supp. 2d 678, 710 (S.D. Tex. 1999).

[118] *Id.*

(2) personal injury and death so caused by the condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.[119]

However, the TTCA does not waive immunity for intentional torts.[120] The TTCA states in relevant part that it does not apply to claims:

(1) based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection, or rebellion;
(2) arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities.[121]

The TTCA also excludes claims that arise "from the failure to provide or the method of providing police or fire protection."[122] The Court will now apply these standards to Plaintiff's claims.

### Negligent use of weapons

Plaintiff's claim against the City for the Officers' negligent use of weapons fails because the actions described in the complaint indicate an intentional tort. "A plaintiff cannot pursue pendent state claims under the Texas Tort Claims Act where they are based on . . . an event alleged under a contemporaneous § 1983 cause of action to be an intentional tort."[123] A claim properly stated as an intentional tort may not be restated as a claim for negligence.[124] However, the conduct underlying intentional torts may be a basis for proper claims of negligence.[125] The "difference between a negligence cause of action and an intentional tort is not whether defendant intended the acts, but whether defendant intended the resulting injury."[126]

---

[119] Tex. Civ. Prac. & Rem. Code § 101.021.
[120] *See Taylor v. Gregg*, 36 F.3d 453, 457 (5th Cir. 1994); *Riggs v. City of Pearland*, 177 F.R.D. 395, 405 (S.D. Tex. 1997).
[121] Tex. Civ. Prac. & Rem. Code § 101.057.
[122] Tex. Civ. Prac. & Rem. Code § 101.055(3).
[123] *Taylor*, 36 F.3d at 457.
[124] *Lopez-Rodriguez v. City of Levelland, Texas*, 100 F. App'x 272, 275 (5th Cir. 2004) (per curiam).
[125] See *Whittington v. City of Cuero, Texas*, 2007 U.S. Dist. LEXIS 22463, 2007 WL 951864, *12 (S.D. Tex. March 28, 2007) (citing *Lopez-Rodriguez*, 100 F. App'x at 275).
[126] *Khansari v. City of Hous.*, 14 F. Supp. 3d 842, 873 (S.D. Tex. 2014).

Under the circumstances described in Plaintiff's complaint, Lara and De La Rosa both fired directly at Decedent numerous times. Specifically the complaint states Lara, "pulled out his gun and fired four rounds into the pick-up truck."[127] Lara and De La Rosa then "approached the vehicle firing their own additional rounds at David, hitting him in the arm and chest."[128] These allegations indicate not that Decedent's injuries resulted from the Officer's negligent use of their weapons, but rather that they intended to cause Decedent injury. Thus the City is immune from this claim under the TTCA.

Plaintiff's argument that he is pleading in the alternative that the actions were negligent is not persuasive. Plaintiff relies on *Khansari v. City of Houston*, a district court case where a young man with severe anxiety was tasered after police were called.[129] The Court notes that, here too, it appears that Plaintiff has copied most of the language relating to his TTCA claims directly from the complaint in that case.[130] However, the factual allegations at issue here differ from those in *Khansari.* There the defendant police officers fired a taser dart which pierced the plaintiff's eye.[131] The district court noted that the officers did not intend to taser the young man in the eye, and found a claim for negligence.[132] The allegations described in Plaintiff's complaint do not plausibly give rise to the inference that the Officers did not intend to cause injury to the Decedent when they fired their guns directly at him multiple times.

Plaintiff's allegations describe an intentional tort, and under the TTCA the City is entitled to governmental immunity as to this claim.[133] It is **DISMISSED WITH PREJUDICE.**

---

[127] Dkt. No. 7 p. 6, ¶ 22.
[128] *Id.* ¶ 23.
[129] 14 F. Supp. 3d 842 (S.D. Tex. 2014).
[130] *See Khansari et al. v. City of Houston,* No. 4:13-cv-02722, 2014 U.S. Dist. LEXIS 49418 (S.D. Tex.) Dkt. No. 1.
[131] *Khansari v. City of Hous.,* 14 F. Supp. 3d 842, 872 (S.D. Tex. 2014).
[132] *Id.* at 873.
[133] *See Holland v. City of Hous.,* 41 F. Supp. 2d 678, 714 (S.D. Tex. 1999).

*Negligence due to defective equipment*

Defendants argue that Plaintiff's claim for negligence due to the use of the dispatch equipment must be dismissed because they relate to the misuse of information which is covered under governmental immunity.[134] Plaintiff responds that the claim is mischaracterized by the Defendants and instead is based on the faulty condition of the dispatch equipment.[135]

Under the TTCA: "A governmental unit in the state is liable for . . . personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."[136] For immunity to be waived, "personal injury or death must be proximately caused by a condition or use of tangible personal or real property."[137] To establish a waiver of the City's immunity under § 101.021(2), the Court must therefore determine whether the condition of the dispatch equipment was a proximate cause of the Decedent's death.[138]

Proximate cause requires both "cause in fact and foreseeability."[139] For a condition of property to be a cause in fact, the condition must "serve[] as 'a substantial factor in causing the injury and without which the injury would not have occurred.'"[140] "Property does not cause injury if it does no more than furnish the condition that makes the injury possible."[141] To be a substantial factor, the condition or use of the property "must actually have caused the injury."[142]

---

[134] Dkt. No. 8 p. 19, ¶ 40.
[135] Dkt. No. 9 pp. 23-24.
[136] Tex. Civ. Prac. & Rem. Code §§ 101.021(2).
[137] *Dallas Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342-43 (Tex. 1998).
[138] *See City of Dall. v. Sanchez*, 494 S.W.3d 722, 726 (Tex. 2016).
[139] *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 929 (Tex. 2015).
[140] *Id.* (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010)).
[141] *Bossley*, 968 S.W.2d at 343.
[142] *Dall. Cty. v. Posey*, 290 S.W.3d 869, 872 (Tex. 2009) ("This nexus requires more than mere involvement of property; rather, the condition must actually have caused the injury.").

"[T]he use of property that simply hinders or delays treatment does not actually cause the injury and does not constitute a proximate cause of an injury."[143]

While Plaintiff is correct that Defendants' inaccurately characterize the nature of his claim, nonetheless, the Court concludes that Plaintiff fails to state a claim. Plaintiff alleges that the equipment did not transmit information from the dispatcher to the responding officer because of its faulty condition and that "[b]ecause critical information did not reach the officers, they acted with excessive force."[144] However, Plaintiff elsewhere specifically alleges "[t]he dispatcher did not [] report [Decedent's] mental illness or past treatment nor call for any medical personnel or mental health crisis specialist to report to Wagon City South."[145] Thus, Plaintiff fails to allege that the faulty dispatch equipment caused the injury. While the allegedly faulty dispatch equipment may have "furnished the condition" which made the injury possible, it did not "actually cause the injury."

In a similar case, *City of Dallas v. Sanchez*, the Supreme Court of Texas affirmed the dismissal of a case alleging that faulty 9-1-1 telephone equipment was the proximate cause of death from a drug overdose because it caused a delay in treatment.[146] In those circumstances the Texas Supreme Court found that the "malfunction was merely one of a series of factors" that contributed to the injury.[147] The court considered the time between the call and the injury, the misinterpretation of information, and the drugs taken by the plaintiff as contributing factors.[148] Similar factors are at issue here. The injuries did not occur immediately after the call, but after Decedent fled in a high speed car chase. While the Officers may have acted differently if they

---

[143] *Sanchez,*, 494 S.W.3d at 726. (quotations omitted).
[144] Dkt. No. 7 p. 20, ¶ 67.
[145] Dkt. No. 7 p. 4, ¶ 12.
[146] 494 S.W.3d 722 (Tex. 2016) (per curiam).
[147] *Id.* at 727.
[148] *Id.*

had been provided information regarding Decedent's mental state, the injuries themselves were not caused by the dispatch equipment or lack of information. Rather they were caused by the actions of Decedent who fled the scene, the Officers' response, and the shots fired. Therefore, Plaintiff fails to allege that the allegedly faulty equipment was the proximate cause of his injuries and thus, the City is entitled to immunity. This claim is **DISMISSED WITH PREJUDICE.**

*Bystander Emotional Distress*

Plaintiff also brings a bystander claim under the TTCA for Mr. Green's emotional distress at witnessing the death of his son.[149] Defendants' motion did not explicitly move to dismiss Plaintiff's bystander claim, however, since the bystander claim relies upon a claim of negligence, and Plaintiff's underlying claims of negligence have been dismissed, the Court will nonetheless consider the sufficiency of Plaintiff's allegations.

Texas does not recognize an independent cause of action for negligent infliction of emotional distress.[150] Texas law generally permits a bystander to recover mental anguish damages after witnessing a close relative suffer a traumatic injury only if the cause of that distress was a defendant's negligent action.[151] However, as noted above, Plaintiff's allegations are not sufficient to support finding that the City "negligently inflicted serious or fatal injuries" on the Decedent.[152] Thus the Court **DISMISSES WITH PREJUDICE** Plaintiff's claim for negligent infliction of emotional distress and for bystander recovery.

## IV.    HOLDING

Plaintiff states a cognizable claim against Defendants Lara and De La Rosa for excessive force in violation of the Eight Amendment and Defendants' motion is **DENIED** as to this claim.

---

[149] Dkt. No. 7 p. 21, ¶¶ 68-69.
[150] *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993).
[151] *See Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 80 (Tex. 1997).
[152] *Boyles*, 855 S.W.2d at 598.

All other claims and defendants are **DISMISSED WITH PREJUDICE**.

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 14th day of May, 2018.

_____
Micaela Alvarez
United States District Judge