UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| DAVID M. GREEN, Individually, and on | § | |
| behalf of the ESTATE OF DAVID M. | § | |
| GREEN II | § | |
| | § | |
| VS. | § | Civil Action No. 7:18-cv-49 |
| | § | |
| THE CITY OF MISSION, | § | |
| JAVIER LARA, and | § | |
| SEAN DE LA ROSA | § | |

## PLAINTIFF'S MOTION TO PARTIALLY STRIKE ALBERT RODRIGUEZ'S PROPOSED TESTIMONY

David M. Green ("Mr. Green"), on behalf of the estate of David M. Green, II ("David") and himself, respectfully requests the Court to exclude portions of proposed testimony of Defendants' expert, Albert Rodriguez. Rodriguez has a history of being struck by federal courts across Texas where, as here, he testifies as an expert in support of law enforcement officers alleged to have used excessive force. *See, e.g. Perez v. City of Austin*, No. A-07-CA-044 AWA, 2008 WL 2557492, at *4 (W.D. Tex. June 19, 2008); *Ibarra v. Harris County*, No. 4:04-cv-186, Dkt. No. 245 (S.D. Tex. Mar. 2, 2005).[1] Rodriguez's qualifications and integrity have been questioned, and he has previously been found to have improperly coached police officers' testimony to support his expert opinion. *See Ibarra* at 13-14. Judge Hoyt of the Southern District of Texas scathingly passed on Rodriguez's trustworthiness:

> It is like the cuttlefish squirting out ink in an effort to escape. Rodriguez's testimony is just another stream of endless, irrepressible repetition of half-truths.

---

[1] Judge Hoyt's order is attached as Exhibit A.

1

The Texas Observer recently catalogued Rodriguez's reputation and improprieties as an expert witness in an article titled, "Meet the Expert Who Helps Texas Cops Justify Extreme Behavior,"[2] (Aug. 9, 2017).

Here, Mr. Green seeks to exclude Rodriguez's testimony for which he has no qualifications as an expert.

## BACKGROUND

This case arises from the unconstitutional use of deadly force by officers of the Mission Police Department in response to a distress call by Mr. Green regarding Mr. Green's mentally ill son, David, who was suffering a schizophrenic episode.  A police officer aggressively confronted David with a drawn weapon leading to a dangerous vehicular pursuit, in which David was shot at multiple times as he attempted to flee from the police.  The pursuit ended when David crashed his truck into a large tree, rendering his truck inoperable. When David, who was unarmed and no longer an immediate threat to any officer or bystander, Defendant Javier Lara, inexplicably, and without provocation, shot and killed David.

## ARGUMENT & AUTHORITY

A.    **Authority**

The Court possesses the authority of determining whether expert opinion testimony should be admitted into evidence. While it is the duty of the jury to ascertain what weight to give evidence in its deliberations, it is the function of the Court to ensure that expert testimony is of sufficient validity to warrant its admission into evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). To meet these standards, a party must establish that its expert is not only qualified, but also that the proposed testimony is both relevant and reliable. *Id.*

---

[2] *See* Exhibit B.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court enumerated four factors to help a trial court assess whether scientific reasoning or methodology is valid and properly applied to a case. 509 U.S. at 592-93. These factors include: (1) "whether it can be (and has been) tested;" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) whether there is a "known or potential rate of error" and "standards controlling the techniques operations;" and (4) whether the methodology has received "general acceptance" within the scientific community. *Id.* at 593-94.

Pursuant to Rule 702 of the Federal Rules of Evidence, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. This rule lays responsibility on the court to "ensure that any and all scientific testimony is not only relevant but reliable." *Daubert*, 509 U.S. at 589. Reliability does not require certainty, but must be demonstrated by evidence that the knowledge is more than speculation. *Id.* at 590. An expert may not rely on his or her experience without explaining how that experience led to the expert's conclusion in the case. Thus, when a party objects to an expert's proposed testimony, it is up to the proponent of the expert to demonstrate the admissibility of the testimony. In any case, a court "should refuse to allow an expert witness to testify if the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting Fed. R. Evid. 702).

In further making a determination of admissibility, courts are mindful of distinguishing between lay and expert testimony. As Federal Rule of Evidence 701 acknowledges, "the distinction between lay and expert testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by a specialist in the field." Fed. R. Evid. 701 (Adv. Comm. Notes (2000 Amend.)). Further, expert testimony may not improperly invade the province of the jury or the court by offering legal conclusions. *Texas Peace Officers v. City of Dallas*, 58 F.3d 635 (5th Cir. 1995) (affirming trial court's exclusion of expert testimony: "The issue before the jury was whether the City had violated the TPOA's First Amendment rights. In his excluded testimony, Bell states that the constitutional rights of the TPOA have been violated. Bell is merely giving the jury his view of how its verdict should read."). If the jury is equally competent to form an opinion on an ultimate fact issue, then an expert's opinion is of no assistance. *Id.*

**B.     The Court should not allow Rodriguez to testify as to areas on which he is not qualified.**

Rodriguez's purported expertise is grounded in his training and experience as a law enforcement officer. Rodriguez does not purport to be an expert in psychology or the legal field. Likewise, he does not claim to be an expert regarding automobiles or applied mechanics. Moreover, Rodriguez does not offer evidence in support of his qualifications with respect to these areas. Yet, Rodriguez opines on these very issues in his report. Given his lack of qualifications, Rodriguez should not be permitted to testify regarding any psychological, vehicular, mechanical, or legal issues at trial.

**1.    The Court should not allow Rodriguez to testify about memory and witness perception theories.**

4

*Paragraphs 66-70.* In paragraphs 66-70 of his report, Rodriguez provides non-expert opinions regarding witness memory and perception theories he dubs "Critical Incident Amnesia" and "Tunnel Vision." Rodriguez offers these opinions attempting to explain away the major contradictions in the Officers' statements and testimony. For example, in paragraph 68, Rodriguez claims that "tunnel vision" causes an officer's peripheral vision during deadly encounters to constrict down from approximately 180 degrees to as narrow as 3 to 4 degrees. In paragraph 66, Rodriguez explains how "critical incidents" like shootings cause "tremendous gaps in memory recall and/or the chronology of events."

The problem is that Rodriguez is not a psychologist qualified to discuss these purported theories. Rodriguez states that he attended the "Force Science Institute" and is certified as a "Use of Force Incident Analyst" without explaining the significance of those purported qualifications or how they allow him to opine on these psychological theories. His resume, however, shows that the "Certification" is the product of a five-day training course. Rodriguez may as well have based his testimony in paragraphs 66-70 on his decision to stay at a Holiday Inn Express while he wrote his report.

The Court should not allow this testimony because Rodriguez is not qualified to opine in the field of psychology.

*Paragraph 106 (last sentence).* The last sentence of paragraph 106 likewise draws a conclusion about why Officer De La Rosa forgot a critical fact. Rodriguez opines that Officer De La Rosa's forgetfulness is "quite understandable" because he was focused on David. For the reasons already discussed, Rodriguez is not qualified to explain memory recall.

**2.  The Court should not allow Rodriguez to testify about airbags.**

*Paragraph 94 (last three sentences) – 95 (first two sentences).* In the last three sentences of paragraph 94 and the first two sentences of paragraph 95, Rodriguez offers testimony regarding deployed airbags. For example, he states that "airbags stay inflated for [a] very short period of time" and opines that there was "ample time for the airbag [in David's truck] to deflate by the time" the Officers reached the crashed truck. All this in an erroneous attempt to explain how Officer Lara could have observed David "messing with the gearshift" after airbags in his truck deployed as a result of colliding into the tree.

Officer Rodriguez offers "airbag research" and his "experience as a collision investigator" as the only bases for these statements. He does not otherwise explain his qualifications. He does not even attempt to explain how being a collision investigator supports his testimony.

**3.   The Court should not allow Rodriguez to testify as a legal expert.**

In paragraph 34, Rodriguez concedes that he is not an expert in the law, yet he proceeds to engage in rigorous, legal analysis. Ironically, large portions of his report read more like a legal memorandum. Rodriguez relies heavily on case law, enumerates purported relevant factors to multi-part tests, and then applies his version of the facts to what he believes is the current state of the law. Paragraphs 30, 34, 35, 46, 47, 61, 62, 63, 78, 79, 81, 86, 87, 89, 90, 98, 99, 101, 102, 103, 104, 109, 111, 122, and 123.

Likewise, he parses criminal statutes in the Texas Penal Code, including those for aggravated assault (paragraph 42), criminal attempt (paragraph 43), murder (paragraph 43), deadly force in defense of person (paragraph 45), defense of third person (paragraph 45), and arrest and search (paragraph 45), in order to reach the conclusion and speculate that the officers could have perceived that these violations had occurred at the time of their encounter with David, which afforded them the right to "neutralize" David.

While Rodriguez may argue that he is competent to engage in these legal analyses by virtue of the fact that his training and experience has implemented the teachings of these constitutional cases, he does not hold a law degree, he is not a legal expert, and his familiarity and experience with this case law is only incidental to his professional experience in the field of law enforcement.

**C.**     **The Court should not allow Rodriguez to testify about issues that are not helpful or not relevant for a jury.**

Rodriguez spends a substantial portion of his report drawing conclusions about the evidence that are not specific to the training of law enforcement officers. He also provides conclusions and testimony that do not help the trier of fact understand an issue.

*Paragraph 53.* This paragraph is conclusory and speculative. Rodriguez sprays this paragraph with hyperbolic phrases like "there should be no question" and "[the Officers] without question could have." Rodriguez ultimately concludes that, had the Officers not rushed to David's vehicle and instead waited to see whether he would come out on his own, "that would have done nothing for the safety of the residents." But Rodriguez does not explain how his law enforcement experience informs his statements and ultimate conclusion.

*Paragraph 62.* Rodriguez provides no bases for stating that witnesses who criticize police officer actions after the fact "in most instances [] do not have all the information known and/or perceived by the involved officers." Moreover, his testimony in this paragraph is simply commentary on the credibility of witnesses who observed the shooting. These credibility determinations are improper and should be raised through cross-examination of witnesses, not disregarded wholesale by purported expert testimony. *See Amin-Akbari v. The City of Austin*, No. 1:13-cv-472-DAE, Order Granting Plaintiff's Motion to Exclude Expert Testimony, Dkt. No. 96 at 30 (W.D. Tex. Oct. 1, 2014)[3]

---

[3] Attached as Exhibit C.

***Paragraph 64 (first two sentences).*** The first two sentences of paragraph 64 offer no expert statement at all, let alone anything based in law enforcement experience. They are simply general statements about why people should not criticize police officers that do not assist the trier of fact.

***Paragraph 65 (first two sentences).*** Similarly, the first two sentences of paragraph 65 do not assist the trier of fact. The first sentence stating that Officers don't have the benefit of knowing how events will unfold is not a statement that requires an expert. The second sentence is entirely speculation about an imagined response to an event that did not occur. Rodriguez offers no basis at all for this testimony.

***Paragraph 71 (last two sentences).*** The last two sentences are conclusory and speculative. Rodriguez opines on the motivations of Officer Cabrera and David without offering any bases for this testimony.

***Paragraph 74 (last two sentences).*** The last two sentences of paragraph 74 are statements regarding expectations that citizens have for police officers. These statements are not rooted in expertise in law enforcement training and procedures. They are merely speculation and conjecture. At the very least, the statements presented have no relevance for the trier of fact here.

***Paragraph 75 (last sentence).*** The last sentence of paragraph 75 offers a conclusory opinion as to Officer Cabrera's intent when he first encountered David. Strangely, Rodriguez also opines on what Mr. Green's counsel "implied" with certain questions during Officer Cabrera's and Lara's depositions. There is no relevance or basis for this testimony.

***Paragraph 82 (third sentence).*** The third sentence of paragraph 82 is Rodriguez's opinion as to questions asked during Officer Cabrera's deposition. It also has no relevance or basis as expert testimony.

**CONCLUSION**

8

Mr. Green respectfully requests that the Court exclude the testimony of Albert Rodriguez described above.

Dated: March 27, 2019

Respectfully submitted,

/s Omar Ochoa
Omar Ochoa
*Attorney-in-Charge*
S.D. Tex. Bar No. 2081960
121 N. 10th Street
McAllen, Texas 78501
Telephone: (956) 630-3266
oochoa@omarochoalaw.com

Victor Rodriguez
*Of-Counsel*
S.D. Tex. Bar No. 562260
121 N. 10th Street
McAllen, Texas 78501
Telephone: (956) 630-3266
victor@vrodriguezlaw.com

**Attorneys for David M. Green,
Individually, and on behalf of the Estate
of David M. Green II**

## <u>CERTIFICATE OF SERVICE</u>

On March 27, 2019, I filed the foregoing document using the District Clerk's Electronic Case Filing system, and all counsel of record will receive electronic notice via the same. The individuals and parties identified below have been served in the manner indicated:

Heather Scott
State Bar No. 24046809
USDC Adm. No. 575294
Email: hscott@guerraleeds.com
*Of Counsel*

R.D. "Bobby" Guerra
*Attorney in Charge*
State Bar No. 08578640
USDC Adm. No. 5949
Email: RDGuerra@guerraleeds.com

GUERRA, LEEDS, SABO
& HERNANDEZ, P.L.L.C.
10123 N. 10th Street
McAllen, Texas 78504
Telephone: (956) 541-1846
Facsimilie: (956) 541-1893

**ATTORNEYS FOR DEFENDANTS**